UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED SPECIALTY INSURANCE COMPANY, and SERIES 1 of OXFORD INSURANCE COMPANY NC LLC, <br><br> Plaintiffs, <br> v. <br><br> SULTAN TRANS, INC., and KHAMIDJON MURODOV <br><br> Defendants. | CIVIL ACTION NO. |

# COMPLAINT

Plaintiffs United Specialty Insurance Company ("USIC") and Series 1 of Oxford Insurance Company NC LLC ("Series 1") (collectively, "Oxford"), by counsel and for their Complaint against Defendants Sultan Trans, Inc. ("Sultan Trans") and Khamidjon Murodov ("Murodov") (collectively, the "Defendants"), state as follows:

## Nature of the Action

1. Consistent with the terms of the insurance policy it issued to the Defendants, Oxford has been actively defending the Defendants in connection with an underlying lawsuit filed against them. Oxford has also moved to unconditionally interplead the maximum amount of its liability under the terms and conditions of the implicated insurance policy ($1,000,000) into federal court in connection with that underlying lawsuit, which would allow the funds to be used to satisfy a judgment against the Defendants in the underlying lawsuit. Although no limits would remain under the policy after the funds are interpleaded, Oxford has nevertheless agreed to continue providing a defense to the Defendants even after the funds have been interpleaded.

1

2. In return, the Defendants have accused Oxford of acting in bad faith by moving to interplead the limits of its policy and threatened to enter into an agreement with the underlying plaintiffs without Oxford's consent.

3. Oxford and the Defendants disagree about whether, under the terms of the Policy, the Defendants may enter the proposed agreement without Oxford's consent; about whether Oxford has acted in bad faith by not consenting to the proposed agreement; and about whether Oxford has acted in bad faith by moving to interplead the policy limits into federal court. Oxford files this lawsuit to obtain a resolution of these disputes.

4. Specifically, Oxford seeks a declaratory judgment stating that: (1) the implicated policy prevents the Defendants from entering into the proposed agreement without Oxford's consent; (2) Oxford has not acted in bad faith by not consenting to the proposed agreement; and (3) Oxford has not acted in bad faith by moving to interplead the maximum amount of its liability under the terms and conditions of the implicated insurance policy into federal court and agreeing to provide a defense to the Defendants in the underlying lawsuit for the remainder of the matter even after the full limits of its policy have been interpleaded.

## Parties, Jurisdiction, and Venue

5. USIC is in the business of selling insurance. It is a Delaware company, with its principal place of business located in Bedford, Texas.

6. Series 1 is in the business of providing captive insurance. Series 1 is a North Carolina limited liability company, with a principal place of business located in Aberdeen, North Carolina. The sole member of Series 1 is Oxford Insurance Company NC LLC, which is a Delaware limited liability company, with a principal place of business located in North Carolina.

The sole member of Oxford Insurance Company NC LLC is Oxford Acquisition Company, which is a Delaware company with its principal place of business located in Delaware.

7. USIC and Series 1 (defined above collectively as "Oxford") provide insurance against risks located in, among other places, Indiana.

8. Sultan Trans, an over-the-road trucking company, is an Indiana corporation, with its principal place of business located in South Bend, Indiana.

9. Murodov, an employee and agent of Sultan Trans (an Indiana corporation), is domiciled in Brooklyn, New York.

10. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between USIC, Series 1, Sultan Trans, and Murodov, and the amount in controversy, exclusive of interest and costs, exceeds $75,000. Specifically, the underlying matter involves multiple bodily injury and property damage claims resulting from an automobile accident, which allegedly total several million dollars. The relevant insurance policy includes a $1,000,000 liability coverage limit.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred, and/or a substantial part of property that is the subject of the action is situated, in this district.

**Factual Background**

*The Accident & The Underlying Lawsuit*

12. On August 18, 2021, Murodov was allegedly driving a semi-tractor and trailer owned and/or controlled by Sultan Trans in the course and scope of his employment and agency with Sultan Trans when he allegedly collided with the rear of another trailer being towed by a motorhome, and the motorhome allegedly lost control and overturned (the "Accident").

3

13. The Accident allegedly caused individuals occupying and operating the trailer and motorhome to incur bodily injuries and allegedly caused various property damage.

14. On August 25, 2021, individuals allegedly harmed as a result of the Accident (collectively, the "Underlying Plaintiffs") filed a lawsuit relating to the Accident against the Defendants. The lawsuit is now styled *Wheeler v. Sultan Trans Inc., et al.*, Case No. 21HO-CC00043-01 and remains pending in the Circuit Court of Atchison County, Missouri (the "Underlying Lawsuit").

15. In general, the Underlying Plaintiffs assert multiple claims against the Defendants arising from the Accident and seek to hold the Defendants liable for the bodily injuries and property damage resulting from the Accident.

### The Policy

16. USIC issued an insurance policy—Policy No. NKM-ARMSII-3-21-NC (the "Policy")—to Sultan Trans, effective June 30, 2021 to June 30, 2023. A true and accurate copy of the Policy (with premium amounts redacted) is attached hereto and incorporated herein as **Exhibit A**.

17. The Policy is fully reinsured by Series 1. Series 1 bears responsibility for handling claims made under the Policy, including the responsibility to make payments under the Policy.

18. The Policy was issued in Indiana to provide insurance to an Indiana corporation (Sultan Trans).

19. The "Covered Autos Liability" coverage part of the Policy provides coverage for sums an insured must pay as damages because of bodily injury or property damage to which the insurance applies.

20. The "Covered Autos Liability" coverage part in the Policy is subject to a $1,000,000 limit for each accident. The Policy states that "[r]egardless of the number of covered 'autos', 'insureds', premiums paid, claims made or vehicles involved in the 'accident', the most [Oxford] will pay for the total damages and 'covered pollution cost or expense' combined resulting from any one 'accident' is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations."

21. Notably, the structure and limits of the Policy were requested and approved by Sultan Trans before the Policy was issued.

22. Among other things, through the Policy, Oxford has the right and duty to defend an insured against a suit asking for covered damages and the right to investigate or settle any claim or suit as Oxford considers appropriate. That "duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements."

23. The Policy also sets forth certain rights and obligations upon insureds—here, the Defendants. Among other things, any insured under the Policy must "[a]ssume no obligation, make no payment or incur no expense without [Oxford's] consent, except at the 'insured's own cost[ ]" and must "[c]ooperate with [Oxford] in the investigation or settlement of the claim or defense against [a] 'suit'."

24. Regarding assignment, the Policy states that an insured cannot transfer any "rights and duties" under the Policy without Oxford's written consent (except under circumstances not relevant here—like in the case of death of an individual named insured).

25. The Policy also prevents anyone from bringing a legal action against Oxford until, among other things, there "has been full compliance with all terms" of the relevant coverage form.

5

*Coverage for the Claim*

26. After the Accident, the Defendants made a claim to Oxford for coverage under the Policy (the "Claim").

27. Oxford agreed to defend the Defendants under the "Coverage Autos Liability" coverage part of the Policy in connection with the claims asserted against the Defendants in the Underlying Lawsuit and with any other claims or suits that have been or may be asserted against the Defendants for injuries and damages arising from the Accident. Oxford's defense was without a reservation of rights.

28. Consistent with that agreement, Oxford has actively provided a defense to the Defendants in the Underlying Lawsuit. Specifically, Oxford retained counsel to fully defend the Defendants just days after the Accident occurred (and before the Underlying Lawsuit was filed). Oxford also retained separate counsel for the individual Defendant.

29. Further, Oxford has repeatedly stated that it will continue to provide a defense to the Defendants in the Underlying Lawsuit without a reservation of rights.

30. Under the law, even where an insurer is providing a defense to a claim, an insurer may interplead the maximum amount available under an implicated policy where, as here, the insurer determines the limits of the policy may be exceeded due the nature of the claim.

31. Accordingly, in addition to providing a defense for the Defendants in the Underlying Lawsuit, Oxford separately initiated an action in the United States District Court in the Western District of Missouri—styled *United Specialty Insurance Company, et al. v. Robert Cosgrove, et al.*, Case No. 5:21-cv-06137-DGK (the "Interpleader Lawsuit")—seeking to interplead and deposit the maximum limit of Oxford's liability for the Claim ($1,000,000) (the "Fund") into the federal court.

32. Oxford has also repeatedly offered to contribute the full amount of the limits available under the Policy to settle and reduce the Defendants' ultimate liability (though such offers have never been accepted and the Underlying Plaintiffs have never made an offer within the limits of the Policy).

33. Although Oxford moved to interplead the Fund and has offered to make the Policy limits available for settlement, it has also reiterated its agreement to continue providing the Defendants a defense in the Underlying Lawsuit until the Underlying Lawsuit concludes, even after the Fund had been interpleaded.

### *Proposed Agreement Without Oxford's Consent*

34. On January 11, 2023, with the Interpleader Lawsuit pending and Oxford agreeing to provide a defense for the entirety of the Underlying Lawsuit, Oxford was forwarded a letter (the "Letter") indicating that the Underlying Plaintiffs and the Defendants had and/or intended to enter into an agreement regarding the Underlying Lawsuit (the "Agreement"). A true and accurate copy of the Letter is attached hereto and incorporated herein as ***Exhibit B***.

35. The Letter informed Oxford that the Underlying Plaintiffs and the Defendants have entered and/or intend to enter an agreement under which the Defendants will (among other things):

   a. Waive their right to a jury trial and allow the Underlying Plaintiffs' claims to be tried or arbitrated by one of two retired judges selected by the Underlying Plaintiffs;

   b. Allow the Underlying Plaintiffs to convert any determination from their selected judge to a judgment;

   c. Waive their rights to appeal any verdict or judgment relating of the claims;

7

    d. Set the Underlying Plaintiffs' collective minimum damages at $2,500,000 and maximum damages at $15,000,0000, with individual damages "to be subsequently negotiated"; and

    e. Cooperate in a "bad faith case" against Oxford to be litigated by the Underlying Plaintiffs' selected counsel.

(Note, although the Letter is not entirely clear, it appears to indicate that *both* Defendants have entered and/or intend to enter into the Agreement.)

36. The Defendants did not seek—let alone, obtain—Oxford's consent to agree to any of these terms before doing so.

37. After receiving the Letter, Oxford responded by: (1) again explaining it remained willing to contribute the full limits of the Policy in connection with a resolution of the Underlying Lawsuit with the Underlying Plaintiffs; (2) stating that the Policy requires the Defendants to obtain Oxford's consent to enter into the Agreement; and (3) reminding the Defendants of the terms of the Policy and the rights and obligations they agreed to under the Policy, including cooperating with the defense of the Underlying Lawsuit.

38. Notably, to date, the Underlying Plaintiffs have never made any monetary demand within the limits of the Policy. In fact, prior to providing Oxford the Agreement (which includes a "high/low" of $2.5 million to $15 million), the Underlying Plaintiffs had not made a monetary demand of any kind in connection with the Underlying Lawsuit that was shared with the Defendants' insurer, Oxford.

39. A day after Oxford responded to the Letter, it received a communication from the Underlying Plaintiffs' counsel indicating that the Defendants wanted to enter into the Agreement with the Underlying Plaintiffs and that Oxford's refusal to consent to the Agreement constitutes

bad faith. A true and accurate copy of this communication is attached hereto and incorporated herein as **Exhibit C**.

40. Given the terms of the Agreement, the Policy does not permit the Defendants to enter into the Agreement without Oxford's consent, and Oxford has not acted in bad faith by not consenting to the Agreement.

41. Similarly, Oxford has not acted in bad faith by moving to interplead the maximum amount of its liability under the terms and conditions of the implicated insurance policy into federal court and agreeing to provide a defense to the Defendants in connection with the Underlying Lawsuit even after the full limits of its policy have been interpleaded.

## COUNT I
**(Declaratory Judgment As To Rights And Obligations Under The Policy)**

42. By reference, Oxford repeats and realleges the allegations contained in the preceding paragraphs as if full set forth herein.

43. Oxford and the Defendants disagree about their respective rights and obligations under the Policy, and a justiciable controversy exists between Oxford and the Defendants regarding those rights and obligations.

44. The Underlying Plaintiffs and the Defendants have entered and/or intend to enter the Agreement without Oxford's consent, and the Policy prevents them from doing so.

45. Thus, Oxford seeks a declaration stating that the Policy does not permit the Defendants to enter into the Agreement without Oxford's consent.

## COUNT II
**(Declaratory Judgment As To Bad Faith In Connection With The Agreement)**

46. By reference, Oxford repeats and realleges the allegations contained in the preceding paragraphs as if full set forth herein.

47. Oxford and the Defendants disagree about whether Oxford has acted in bad faith by not consenting to the Agreement—which appears to be the result of collusion between the Underlying Plaintiffs and the Defendants and includes terms requiring, among other things, a stipulation to a judgment in excess of the Policy limits, the waiver of a jury trial in favor of a determination to be made by judges selected by the Underlying Plaintiffs, and the wavier of any right of appeal—and a justiciable controversy exists between them regarding that matter.

48. Under the law, as part of its obligations under the Policy, Oxford has a duty to deal in good faith with the Defendants in connection with the Claim.

49. Oxford seeks a declaration stating that Oxford has not acted in bad faith by not consenting to the Agreement.

### COUNT III
### (Declaratory Judgment As To Bad Faith For Moving To Interplead)

50. By reference, Oxford repeats and realleges the allegations contained in the preceding paragraphs as if full set forth herein.

51. Oxford and the Defendants disagree about whether Oxford has acted in bad faith by moving to interplead the maximum amount of its liability under the terms and conditions of the implicated insurance policy into federal court and agreeing to provide a defense to the Defendants in connection with the Underlying Lawsuit even after the full limits of its policy have been interpleaded, and a justiciable controversy exists between them regarding that matter.

52. Under the law, as part of its obligations under the Policy, Oxford has a duty to deal in good faith with the Defendants in connection with the Claim.

53. Oxford seeks a declaration stating that Oxford did not act in bad faith by moving to interplead the maximum amount of its liability under the terms and conditions of the implicated insurance policy into federal court and agreeing to provide a defense without reservation of rights

to the Defendants in connection with the Underlying Lawsuit even after the full limits of its policy have been interpleaded.

WHEREFORE, Oxford respectfully requests that the Court: (a) enter declaratory judgment stating that the Policy does not permit the Defendants to enter into the Agreement without Oxford's consent; (b) enter declaratory judgment stating that Oxford has not acted in bad faith by not consenting to the Agreement; (c) enter declaratory judgment stating that Oxford has not acted in bad faith by moving to interplead the maximum amount of its liability under the terms and conditions of the implicated insurance policy into federal court and agreeing to provide a defense, without a reservation of rights, to the Defendants in connection with the Underlying Lawsuit even after the full limits of its policy have been interpleaded; and (d) grant Oxford all other relief that is just and proper in the premises.

Respectfully submitted,

ICE MILLER LLP

*/s/ Samuel B. Gardner*
Nicholas B. Reuhs (# 31181-49)
Samuel B. Gardner (#32825-29)
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100
nicholas.reuhs@icemiller.com
samuel.gardner@icemiller.com

*Counsel for Plaintiffs United Specialty Insurance Company and Series 1 of Oxford Insurance Company NC LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 31, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system.

*/s/ Samuel B. Gardner*
Samuel B. Gardner
